UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MUSTAPHA CAMARA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:26-CV-2513-X |
| MIGUEL VERGARA, *Acting Field Office Director of Dallas ICE Field Office*, et al., | § | |
| | § | |
| | § | |
| | § | |
| *Respondents*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Mustapha Camara's Emergency Motion for Temporary Restraining Order (Emergency Motion) and Petition for Writ of Habeas Corpus (Habeas Petition). (Docs. 2, 12). Camara asks this Court to enjoin Respondents from removing him from the United States and order an immigration judge to reopen his removal proceedings. Having reviewed the record and applicable law, the Court **DENIES** Camara's Habeas Petition and **DENIES AS MOOT** Camara's Emergency Motion.

## I. Factual Background

Camara is a native and citizen of Gambia who claims to be a bisexual man.[1]

[1] The Department of Homeland Security (DHS) cast serious doubts over the sincerity of Camara's purported sexuality. (Doc. 13-2 at 3). Camara is married to a woman with whom he has a child with. DHS alleges, that to the best of its knowledge, prior to Camara's marriage to his now wife, Camara claimed to be a homosexual. After his now-wife became naturalized, they immediately married, and he filed for an I-130 application. Now that he has been re-detained and DHS is pursuing third-country removal, Camara now claims to be a bisexual. Although DHS casts doubt upon the truth of Camara's fear-based claim related to his objection to being removed to Ghana, that is not for this Court to consider, as discussed in detail below.

Camara overstayed his visa and was placed in removal proceedings. In 2022, an immigration judge issued Camara a final order of removal but granted him withholding relief as to Gambia. In May 2025, Camara married a naturalized female United States citizen, and shortly thereafter filed a I-130 application.

On or about July 19, 2026, Camara was detained by U.S. Immigration and Customs Enforcement (ICE). At the latest, on July 21, 2026, Camara, through his Nebraska counsel, was informed that Camara was going to be removed to Ghana.

On July 22, 2026, Camara, through his Nebraska counsel, filed a Form I-246 Application for Emergency Stay of Deportation or Removal seeking to prevent his removal to Ghana. The immigration court in Omaha, Nebraska denied the application the following day.

Also on July 22, 2026, Camara, through his Nebraska counsel, filed a Motion to Reopen his Removal Proceedings asserting that he feared persecution in Ghana because of his bisexuality. Camara also submitted an I-589 application for asylum. DHS opposed this relief in light of diplomatic assurances from Ghana as to treatment of third country nationals.

On July 29, 2026, Camara, through his Texas counsel, filed this Emergency Motion, alleging that Camara was going to be removed that evening representing to the Court that "it [was] unclear if ICE is intending to remove him to Gambia or a third country."[2] Camara argued that this removal would be unlawful regardless of whether he was being removed to Gambia (in light of his withholding of removal) or

[2] Doc. 2 at 2.

to a third country (having "been accorded no opportunity to seek protection").[3]

Based on Texas counsel's representations, the Court set an emergency hearing for the next day at 2:00pm. At the end of the hearing, the Court took the matter under advisement and ordered further briefing.

## II. Legal Standard

To be entitled to a writ of habeas corpus under 28 U.S.C. § 2241, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[4] According to the Supreme Court, habeas corpus proceedings are available to aliens "as a forum for statutory and constitutional challenges to post-removal-period detention."[5]

The great writ is reserved for fundamental defects resulting in a complete miscarriage of justice or wholly inconsistent with the demands of fair procedure.[6] This exceptional relief "is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."[7] It is the petitioner's burden to demonstrate that a constitutional violation has occurred.[8]

## III. Analysis

Camara asks this Court to intervene in the Executive Branch's execution of his removal order through: (1) enjoining Respondents from removing him from the

---

[3] *Id.*

[4] 28 U.S.C. § 2241(c)(3).

[5] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

[6] *See Hill v. United States*, 368 U.S. 424, 428 (1962).

[7] *Bowen v. Johnston*, 306 U.S. 19, 26 (1939).

[8] *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam).

United States, and (2) ordering an immigration judge to reopen his removal proceedings.[9] But federal courts are courts of limited jurisdiction.[10] Although this Court has jurisdiction to consider whether Camara has been afforded due process, it lacks authority to grant the relief Camara seeks. And for the reasons explained below, the Court concludes Camara has received all the process he was due—and then some.

### A. This Court does not have jurisdiction to enjoin Respondents from executing a removal order.

As a threshold matter, section 1252(g) states, "[n]o court shall have jurisdiction to hear any cause or claim" arising from the Attorney General's decision to "execute removal orders."[11] The Fifth Circuit recently interpreted "[a] request for stay of removal [as] a challenge to a removal order," and found that a "district court lack[s] jurisdiction to grant such relief."[12] Accordingly, Camara's request that this Court "enjoin[] and restrain[] Respondents . . . from removing [him] from the United States,"[13] is precisely what Congress has placed outside of this Court's jurisdiction.[14] So, the Court lacks authority to enjoin Camara's removal.

---

[9] Doc. 2 at 3; Doc. 12 at 1.

[10] *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) ("This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." (cleaned up)).

[11] 8 U.S.C. § 1252(g).

[12] *Imran v. Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (per curiam) (citing *In re Asemani*, 2025 WL 1823953, at *1 (4th Cir. July 2, 2025); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999); *Fabuluje v. INA*, 244 F.3d 133, 133 (5th Cir. 2000) (unpublished); *Idokogi v. Ashcroft*, 66 F. App'x 526, 526 (5th Cir. 2003).

[13] Doc. 2 at 4.

[14] 8 U.S.C. § 1252(g).

### B. This Court neither has jurisdiction to order an immigration judge to reopen removal proceedings nor to review such proceedings.

Camara also asks this Court to order the immigration judge to reopen his removal proceedings so that he may pursue withholding of removal and protection under the Convention Against Torture.[15] But this Court similarly lacks authority to grant such relief.

First, Camara's request necessarily implicates section 1252(g) because it arises from the execution of his final order of removal.[16] Although Camara frames his request as a challenge to the administrative process, the relief he seeks would require this Court direct an immigration judge to undertake additional proceedings before Camara's removal. This interferes with the Executive Branch's execution of his final removal order by reopening the proceedings and encroaches on an immigration judge's decision that Camara himself labels as "discretionary."[17] Further, this Court cannot substitute its judgment for that of the immigration judge or direct the Executive Branch to exercise discretionary authority in a particular manner.[18]

The Immigration and Nationality Act provides the judicial review process for removal proceedings.[19] Specifically, review of final orders of removal is available

---

[15] Doc. 2 at 2; Doc. 12 at 1.

[16] 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien.").

[17] 8 U.S.C. § 1229a(c)(7); Doc. 12 at 8.

[18] *Id.* § 1252(a)(2)(B); *see, e.g.*, *Bian v. Clinton*, 605 F.3d 249, 253 (2010).

[19] *Id.* § 1252.

through a petition for review filed in the appropriate court of appeals.[20] Likewise, Congress has provided that a petition for review is the "sole and exclusive means" for judicial review of claims for protection under the Convention Against Torture.[21] Further, the Supreme Court has described section 1252(b)(9) as a "zipper clause," consolidating review of issues arising from removal proceedings into a single action before the court of appeals.[22]

The exhaustion requirement in section 1252(d)(1) constitutes a claim-processing rule and allows a petitioner to appeal to the respective circuit court.[23] Here, the Court declines to transfer Camara's claims because the immigration judge has not yet ruled on the motion to reopen. But nothing is stopping Camara from pursuing his right to appeal while the motion to reopen is pending.[24]

Accordingly, whether Camara's motion to reopen should be granted, whether he is entitled to withholding or Convention Against Torture protection, and whether any decision (or lack of decision) should be reviewed are questions committed to the administrative process and, ultimately, the court of appeals—not this Court.

**C. This Court has jurisdiction over Camara's due process violation claims, and he has been afforded all the process he is due.**

Regardless of the jurisdictional issues with Camara's other requests, the Court

---

[20] *Id.* §§ 1252(a)(4), (a)(5), (b)(9).

[21] *Id.* § 1252(a)(4).

[22] *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 (2001).

[23] *Santos-Zacaria v. Garland*, 598 U.S. 411, 420 (2023).

[24] While the Court raised the possibility of transferring this case to the Fifth Circuit because of the fear claim, the Court is not unsure whether the Fifth Circuit is the proper circuit to review such a claim.

does have jurisdiction to consider whether Camara has been afforded due process.[25]

The Supreme Court has held that "the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."[26] And has "long held that no person shall be removed from the United States without opportunity, at some time, to be heard."[27] But the question of what procedures the Constitution requires is "a topic of ongoing controversy."[28]

"Due process requires notice that is reasonably calculated, under all the circumstances, to apprise interested parties and that affords a reasonable time . . . to make an appearance."[29] In the removal context, the Supreme Court explained that "detainees must receive notice . . . that they are subject to removal under the Act . . . within a reasonable time and in such a manner as will allow them to actually seek habeas relief."[30] Then the Supreme Court clarified that to "actually seek habeas relief, a detainee must have sufficient time and information to reasonably be able to

---

[25] *Lopez v. U.S. Immigr. & Customs Enf't*, No. SA-26-CV-01298-JKP, 2026 WL 1549307, at *2 (W.D. Tex. Apr. 23, 2026) ("Therefore, nothing in §§ 1252 or 2242(d) strips the Court of its power of review in this matter to the extent Petitioner raises Fifth Amendment Due Process claims or a constitutional claim that she is entitled to an opportunity to raise a fear claim before she is removed to the Congo" but finding no due process violation when there were DHS diplomatic assurances at the hearing that Congo would not persecute or torture). Cf. *Heikkila v. Barber*, 345 U.S. 229, 234–235 (1953) (holding that habeas was the only cause of action available to challenge deportation under immigration statutes that "preclud[ed] judicial intervention" beyond what was necessary to vindicate due process rights).

[26] *Trump v. J. G. G.*, 604 U. S. 670, 673 (2025) (per curiam) (cleaned up).

[27] *A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 101 (1903) (cleaned up)).

[28] *Alsheref v. Noem*, No. 1:25-CV-190-H, 2025 WL 4220420, at *3 (N.D. Tex. Dec. 3, 2025) (Hendrix, J.) (citing *J.G.G.*, 604 U.S. 670 (2025); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).

[29] *A. A. R. P.*, 605 U.S. at 94–95 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (cleaned up)).

[30] *J. G. G.*, 604 U. S. at 673.

contact counsel, file a petition, and pursue appropriate relief."[31]

Based on the Supreme Court's articulation of due process, Camara received all the process he was due—and more. Camara had over nine days of notice related to his removal to Ghana prior to filing his Emergency Motion in this Court—now over two weeks.[32] He had two attorneys pause his removal—his Texas and Nebraska counsel advocating on his behalf before both an immigration court and this District Court.[33] And he had the ability to file a motion to stay and motion to reopen through the proper administrative channels (not including the Emergency Motion and Habeas Petition in district court which do not seek appropriate relief).[34]

But Camara seeks a broader procedural right: he contends that due process requires this Court to order an immigration judge to reopen his proceedings and allow his withholding and Convention Against Torture claims to be fully adjudicated before his removal. But due process requires notice and an opportunity to be heard;[35] it does not require a particular outcome, guarantee that discretionary relief within another branch of government will be granted, or permit this Court to direct how the Executive Branch must exercise authority Congress committed to it.

Further, as Camara notes, in March 2025 DHS issued a new guidance (March Guidance) regarding third-country removals.[36] This March Guidance outlines two

---

[31] *A. A. R. P.*, 605 U.S. at 95 (cleaned up).

[32] Doc. 12 at 3.

[33] *Id.* at 2–4.

[34] *Id.*

[35] *A. A. R. P.*, 605 U.S. at 95.

[36] Doc. 12 at 8.

ways to remove an alien to a third country: (1) if DHS received certain diplomatic assurances it may proceed with the third-country removal without any process or (2) if there are no diplomatic assurances the burden is on the alien to state a fear of torture or persecution to entitle them to any additional process.[37] Accordingly, "when the Executive decides an alien will not be tortured or persecuted abroad, courts may not second-guess that assessment, at least unless Congress has specifically authorized judicial review of that decision."[38] Camara has had "meaningful notice and a genuine opportunity to pursue fear-based claims"[39] through filing for a motion to stay and motion to reopen before the immigration judge, and this Court cannot step in and order the immigration judge to give Camara the relief he requests on the timeline he requests. Camara's argument that he "has no right to seek review of his claim before an immigration judge" is as confusing as it is incorrect.[40] Camara sought review of his removal proceedings before an immigration judge, some of which were denied and some which remain pending.[41]

This Court cannot go beyond the jurisdiction Congress has granted it and encroach on the Executive Branch in the manner in which Camara asks it to. Camara believes that he has the "right to assert fear of harm or torture."[42] Yes, and there is

---

[37] *Lopez*, 2026 WL 1549307, at *3.

[38] *Id.* (citing *Kiyemba v. Obama,* 561 F.3d 509, 517 (D.C. Cir. 2009)).

[39] *See Aboretugn v. Cole*, No. 5:26-CV-00153-JEK, 2026 WL 1999299, at *9 (S.D. Tex. June 17, 2026).

[40] Doc. 12 at 11.

[41] 8 U.S.C. § 1229a(c)(7); Doc. 12 at 8, 11.

[42] Doc. 2 at 2.

some process afforded to him in seeking to assert that right.[43] And as explained above, that process is not before this Court.[44]

His fear-based claims belong in the administrative stream of the Executive Branch, to be appealed to the relevant circuit court, and are not properly before this Court.

## IV. Conclusion

For the foregoing reasons the Court **DENIES** Petitioner Mustapha Camara's Habeas Petition and Emergency Motion. A separate final judgment will issue.

**IT IS SO ORDERED** this 5th day of August, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[43] *A. A. R. P.*, 605 U.S. at 95.

[44] 8 U.S.C. §§ 1252(a)(4), (a)(5), (b)(9).